IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MERCEDA D. GOODING, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:20-cv-03292-PX |
| SYKES ENTERPRISE, INCORPORATED, | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

Pro se Plaintiff Merceda D. Gooding filed suit against Defendant SYKES Enterprise, Incorporated ("SYKES"), alleging that the corporation discriminated against her on account of disability and race. ECF No. 120. Presently pending before the Court is SYKES' motion for summary judgment. The motion is fully briefed and no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, SYKES' motion is GRANTED.

I. **Background**

The relevant facts, viewed most favorably to Ms. Gooding, are as follows. SYKES operates call centers and employs Customer Service Agents to provide outsourced customer service for Fortune 1000 companies. ECF No. 138-10 at ¶ 4. SYKES is also a self-described "equal employment opportunity employer" that remains committed to providing "reasonable accommodation(s) to the known physical or mental limitations of qualified applicants or employees with disabilities." ECF No. 138-11 at 7-8. When an employee requests an accommodation, SYKES refers the employee to its third-party leave administrator, The Hartford, to handle the accommodations process for SYKES. ECF No. 138-33 at ¶ 6. The Hartford opens a case file, provides the employee with the necessary paperwork, and coordinates with SYKES' Leave of Absence Department regarding the employee's requested accommodations. *Id.* Once

the SYKES team evaluates the request, they communicate their decision back to The Hartford, which, in turn, relays SYKES' decision to the employee. *Id.*

Ms. Gooding began working at SYKES on October 1, 2018, as a "Work at Home Customer Service Agent." ECF No. 138-4 at 31:6-12. SYKES assigned Ms. Gooding to work for its client, The Vitamin Shoppe. *Id.* at 33:13-14. Her responsibilities included answering customer calls and assisting with order issues. ECF No. 138-19 at ¶ 5.

When Ms. Gooding applied for a position with SYKES, she noted on a "voluntary self-identification of disability" form that she "has a disability," but provided no other information about the nature of her disability. ECF No. 138-5. Shortly after she started at SYKES, Ms. Gooding submitted two accommodation requests, one to address her major depressive and post-traumatic stress disorders and one for her arthritis. ECF No. 138-33 at ¶¶ 8, 10. Ms. Gooding also submitted her physician's written recommendation that she be granted intermittent leave to address her mental health issues and arthritis. ECF No. 138-34 at 3-4; ECF No. 138-37 at 3-4.

Pursuant to SYKES' accommodations procedures, The Hartford coordinated with SYKES' Leave of Absence Department and Ms. Gooding's leadership team to process her request. ECF No. 138-33 at ¶¶ 9, 10. The Account Manager of Operations and one of Ms. Gooding's supervisors, Sandra Kittler, approved the requests. *Id.*; ECF No. 138-36 at 1; ECF No. 138-38 at 1. About a month later, Ms. Gooding filed a third request for accommodations for her asthma. ECF No. 138-33 at ¶ 11. Ms. Gooding's doctor recommended additional intermittent time off. ECF No. 138-39 at 3-4. Again, Ms. Kittler approved the requested accommodation. ECF No. 138-33 at ¶ 11; ECF No. 138-40 at 1.

For the first few weeks after she was hired, Ms. Gooding participated in orientation and other training. ECF No. 138-6 at 1. On October 25, she was assigned to the production floor and

began handling customer calls. ECF No. 138-4 at 95:10-14. On October 31, Ms. Gooding asked for help launching her computer system, which evidently did not go as planned. ECF No. 138-21 at 11. Ms. Gooding immediately emailed her supervisors, Ms. Kittler, Valerie Saenz, Jodie Chapman, and Jessie Kysar, complaining that she was "being attacked for tech issues" and discriminated against because she had communicated that she is a "sexual assault victim and disabled." *Id.* at 9-10. Ms. Kittler, in response, tried to reassure Ms. Gooding that "no one is trying to attack you." *Id.* at 8. Ms. Gooding continued, alleging that treatment of her was "inhumane." *Id.* at 1, 3, 7. Ms. Kittler and Ms. Saenz apologized for the technical issues and offered suggestions on how to navigate the online access portal in the future. *Id.* at 2, 5-6, 8-9.

A few days later, a member of the Vitamin Shoppe team emailed all team members reminding them to be kind to their mentors, coaches, and supervisors. ECF No. 138-22 at 6. Ms. Gooding replied to all addressees, accusing the email's author of leveling "slanderous allegations" against Ms. Gooding that were designed "to assassinate [her] character as a disabled black woman." *Id.* at 4. Ms. Gooding further accused the author of racial profiling and of engaging in "hostile, discriminatory and retaliatory behavior." *Id.* at 4-5. The next morning, Ms. Gooding sent another response on the same email chain alleging she had been the victim of harassment, discrimination, and humiliation. *Id.* at 3.

On November 21, 2018, Ms. Gooding exchanged emails with team coach, Serene Contreras, regarding a customer issue that Ms. Gooding had escalated for review. ECF No. 138-23 at 4-6. Ms. Gooding voiced that she felt she was being "nick-picking [sic]." *Id.* at 4. Ms. Contreras explained to Ms. Gooding that she had not followed certain procedures and reminded Ms. Gooding of the need to follow SYKES protocol. *Id.* at 3. Ms. Gooding, in turn, accused Ms. Contreras of using a "nefarious tone" and of "bullying" her. *Id.* at 2.

On November 28, 2018, Ms. Kittler emailed The Vitamin Shoppe team a general reminder about SYKES' timekeeping policies. ECF No. 138-24 at 2-4. In response, Ms. Gooding alleged that ever since she had requested disability accommodations from SYKES, she had been subjected to a "hostile" work environment. *Id.* at 1. She added: "I pray that I can receive better communication instead of these harsh emails from those who has [sic] discriminatory issues against me as I am learning a job." *Id.*

Likewise, on January 9, 2019, a Vitamin Shoppe team coach, Chelsea Bohn, emailed Ms. Gooding about a customer complaint. ECF No. 138-28 at 2. Ms. Bohn attempted to provide Ms. Gooding constructive tips on her interactions with customers, as is done with all SYKES customer service agents. *Id.* Ms. Gooding immediately responded that she did not "believe" Ms. Bohn; that Ms. Bohn's email was harassing; and that if Ms. Gooding is terminated, she will "sue in court for harassment." *Id.* at 1-2. *See also* ECF No. 138-29. During this time, Ms. Gooding would often accuse SYKES personnel of discrimination or harassment in response to routine emails about timekeeping, scheduling, or performance. *See, e.g.,* ECF No. 138-26 at 6-7 (December 14, 2018 emails between Ms. Gooding and Ms. Kittler in which Ms. Gooding stated she needed the discrimination and harassment to cease); ECF No. 138-27 at 1-5 (December 13 and 18, 2018 emails regarding unapproved time off in which Ms. Gooding accused Ms. Kysar of maliciously messing up her schedule and alleged that ever since she disclosed she was disabled and had experienced a sexual assault, attitudes towards her had become negative).

As soon as Ms. Kittler became aware of Ms. Gooding's discrimination and harassment allegations, she brought them to the attention of Cynthia Hicks, SYKES' Area Human Resources Operations Manager. ECF No. 138-19 at ¶18; ECF No. 138-20 at 1; ECF No. 138-22 at 1; ECF No. 138-28 at 1; ECF No. 138-29 at 1. As early as November 2018, Ms. Hicks attempted to discuss

4

the allegations with Ms. Kittler and Ms. Gooding, but Ms. Gooding refused to do so. ECF No. 138-19 at ¶ 18; ECF No. 138-10 at ¶ 17; ECF No. 138-15 at 1.

Ms. Hicks next forwarded the complaints to Jenny Barbee, SYKES' Regional Manager of Employee Relations, who opened an investigation into Ms. Gooding's complaints. ECF No. 138-10 at ¶ 18; ECF No. 138-16 at 1. As part of that investigation, Ms. Barbee also tried to talk with Ms. Gooding, but again, she refused to cooperate and instead accused Ms. Barbee of threatening her. ECF No. 138-8 at ¶ 6; ECF No. 138-9 at 1-6. In the end, the investigation uncovered no evidence of discrimination, retaliation, or hostile work environment leveled at Ms. Gooding. ECF No. 138-8 at ¶ 8.

On February 12, 2019, Ms. Gooding participated in a recorded service call during which she argued with the customer about his online auto-delivery order. ECF No. 138-19 at ¶ 20; ECF No. 138-30. Ms. Gooding eventually placed the customer on hold for about 30 seconds and then when she returned to the line, asked the customer if he had "calmed down." ECF No. 138-19 at ¶ 20; ECF No. 138-30. The customer complained about Ms. Gooding following the call. ECF 138-19 at ¶ 20. Based on this, Ms. Kittler had been prepared to terminate Ms. Gooding, but opted to issue a final written warning so as to give Ms. Gooding one more chance to improve her performance. *Id.* at ¶ 21-22.

Ms. Kittler also tried to discuss with Ms. Gooding the customer call and offer constructive feedback. Ms. Gooding responded that she meant what she said to the customer and began screaming at Ms. Kittler. *Id.* at ¶ 22; ECF No. 138-30. Ms. Gooding also directed racial comments at Ms. Kittler and her family, telling Ms. Kittler, "I don't care if you're married to a Black man, that don't mean nothing to me. You got kids by a Black man, you still got issues with a Black woman, and I believe you a racist." ECF No. 138-30 at 41:50-41:58. *See also id.* at 42:07-42:17

(Ms. Gooding telling Ms. Kittler "because you got a baby with Black man it does not consist you [sic] of loving me or loving any other Black race okay, so I know you got an issue with that."), 42:46-42:50 (Ms. Gooding telling Ms. Kittler "I know you're a racist and you've always had a problem with me."). Ms. Kittler reported this phone conversation to her supervisor, Kirk Jeter, and to Ms. Hicks. ECF No. 138-19 at ¶ 23. Ms. Hicks and Mr. Jeter, in turn, suspended Ms. Gooding, and following an investigation, terminated her on March 6, 2019. *Id.* at ¶ 24; ECF No. 138-10 at ¶ 22.

After exhausting administrative remedies, Ms. Gooding filed suit in this Court on November 13, 2020. She amended her complaint twice since, bringing claims against SYKES for race and disability discrimination, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112–12117, and failure to accommodate her disability under the ADA. ECF No. 120. SYKES now moves for summary judgment in its favor on all claims. For the reasons discussed below, the motion will be granted.

**II.     Standard of Review**

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof ... will not suffice to

prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322.

### III. Analysis

#### A. Ms. Gooding's Summary Judgment Exhibits

As a preliminary matter, SYKES urges the Court to disregard Ms. Gooding's exhibits attached to her opposition because the documents have not been authenticated. ECF No. 150 at 3. Many of Ms. Gooding's exhibits appear to be compilations of documents from a wide variety of written sources. *Id.* at 3-4. For example, one exhibit includes a list of individuals whom SYKES has terminated, alongside an unrelated excerpted email exchange. ECF No. 149-3 at 1-2. Not all exhibit pages include bates numbers, suggesting the documents come from multiple sources. *Id.* Other documents appear to include Ms. Gooding's running commentary about the nature of their content. ECF No. 149-8. Accordingly, SYKES' objection to these exhibits is well placed.

At summary judgment, if the authenticity of a document is contested, the proponent of such evidence must "either authenticate the document or propose a method to doing so at trial." *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 407 (D. Md. 2015); Fed. R. Civ. P. 56, advisory committee's note to 2010 amendments ("The burden is on the proponent to

7

show that the material is admissible as presented or to explain the admissible form that is anticipated."). Federal Rule of Evidence 901 provides that to authenticate or identify "an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). This may be accomplished in a variety of ways, including through an affidavit or declaration of a person with knowledge of the document's authenticity. *Id.* 901(b)(1). *See Williams*, 86 F. Supp. 3d at 407-08 (finding that the burden to authenticate under Rule 901 is not high and plaintiff's declaration explaining her personal knowledge about certain exhibits was sufficient to authenticate exhibits).

Ms. Gooding has made no attempt to authenticate her exhibits. Nor has she explained how she would authenticate the documents at trial. Further, the challenged documents plainly appear to be an amalgam of clips from various sources, raising serious questions about whether the documents are what they purport to be.

That said, much of the information included within the documents is duplicative of other unchallenged record evidence. *Compare* ECF No. 138-21 at 5-9 (emails between Ms. Gooding, Ms. Kittler, and others regarding Ms. Gooding's technology issues) *with* ECF No. 149-4 at 8-11 *and* ECF No. 149-7 at 2-4 (including the same emails regarding Ms. Gooding's technology issues). Moreover, even setting authenticity to the side, none of the documents create a genuine issue of disputed material fact on any of the claims. Accordingly, the Court sees no need to strike the exhibits because they do not alter the analysis.

The Court next turns to SYKES' summary judgment motion, beginning with its challenge to Ms. Gooding's failure-to-accommodate claim.

B.     **Failure to Accommodate**

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). This includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." *Id.* § 12112(b)(5)(A). To establish a failure-to-accommodate claim, a plaintiff must adduce some evidence: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

SYKES contends the claim must fail because Ms. Gooding had never been refused any of her accommodation requests. ECF No. 138-1 at 24-25. SYKES is correct. SYKES has demonstrated, and Ms. Gooding agrees, that it had granted each accommodation to address her major depressive and post-traumatic stress disorders, asthma, and arthritis. ECF No. 120 at 11-12; ECF No. 149 at 15-17.[1] From this, no rational factfinder could conclude that SYKES *refused* to make reasonable accommodations. Thus, summary judgment must be granted in SYKES' favor on this claim.

In response, Ms. Gooding shifts her focus to the interactive process, arguing that because SYKES outright granted her requested accommodation, the corporation is somehow liable for failing to sufficiently discuss her options with her. ECF No. 149 at 15-17. Ms. Gooding misapprehends the purpose of the interactive process. It is designed to facilitate discussion

---

[1] The only accommodation request that SYKES did not grant was a request Ms. Gooding submitted while she was suspended from work just prior to her termination. ECF No. 138-33 at ¶ 12. The necessary medical form was not signed until March 11, 2019, five days after Ms. Gooding was terminated. ECF No. 138-41 at 4. SYKES could not have granted the accommodation at this point because Ms. Gooding was no longer an employee.

9

between employer and employee when "it is not immediately obvious what accommodation would be appropriate." *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 701 (D. Md. 2005). That is not this case. Ms. Gooding plainly made her needs known and SYKES agreed. Ms. Gooding may not pursue a cause of action based on her perceived shortcomings of the interactive process. *Id.* Thus, because no genuine dispute of fact exists as to whether SYKES refused to provide reasonable accommodations, summary judgment as to this claim is warranted.

        C.        **Disability Discrimination Under the ADA**

Ms. Gooding appears to separately aver that SYKES unlawfully discriminated against her by firing her on account of her disabilities. ECF No. 120 at 9-10, 22. This claim is analyzed under the well-established *McDonnell Douglas* burden-shifting framework. *Equal Emp. Opportunity Comm'n v. Optimal Sols. & Techs., Inc.*, 422 F. Supp. 3d 1037, 1042 (D. Md. 2019); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995), *as amended* (June 9, 1995), *as amended* (Mar. 14, 2008). Under this framework, a plaintiff must first establish a *prima facie* case that she was "(1) a qualified individual with a disability; (2) who had been discharged; (3) while fulfilling [her] employer's legitimate expectations at the time of discharge; and (4) the circumstances of [her] discharge raise a reasonable inference of unlawful discrimination." *Equal Emp. Opportunity Comm'n*, 422 F. Supp. 3d at 1042. Once a plaintiff makes this *prima facie* showing, the burden shifts to the defendant to produce some evidence that it terminated the plaintiff for a "legitimate, nondiscriminatory reason." *Id.* at 1043. If the defendant so demonstrates, the burden shifts back to the plaintiff to prove the stated reasons for termination were "mere pretext" for unlawful discrimination. *Id.*

SYKES fronts several grounds for granting summary judgment on this claim. The Court concentrates primarily on the argument that no record evidence permits a rational juror to find Ms.

Gooding's disability was the but-for cause of her firing. *Id.* at 1046. Sure, "close temporal proximity" between disclosure of one's disability and termination "weighs heavily in favor of finding a genuine dispute as to causation." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 380 (4th Cir. 2022). *See also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 575 (4th Cir. 2015) (finding that an employee's termination three weeks after disclosing her disability served as affirmative evidence from which a reasonable jury could conclude that the employee was terminated because of her disability); *King v. Rumsfeld*, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (finding that a two-and-a-half month gap between protected activity and an adverse employment action was long enough to significantly weaken the inference of causation but given the context of the employment situation, it was not enough to undercut causation to render plaintiff's *prima facie* case unsuccessful). But a plaintiff's intervening incidents of misconduct leading to her termination may sever any inference of causation such that mere temporal proximity alone does not suffice. *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (finding that any inference of causation that might arise out of temporal proximity was rebutted by facts that prior to engaging in protected activity, plaintiff had been told her performance was sub-par).

Here, it is undisputed that Ms. Gooding disclosed to SYKES that she had a disability even before she was hired. ECF No. 138-5. Next, within days of her completing orientation, Ms. Gooding submitted the first of two accommodation requests (ECF No. 138-33 at ¶¶ 8, 10), and a third on or about December 28, 2018 (*id.* at ¶ 11), each of which SYKES readily granted, and the last of which had been resolved two months before her termination. *See* ECF No. 138-17. Furthermore, no evidence exists that the same corporation which readily granted reasonable accommodations also fired her because of her disabilities. Rather, the record clearly reflects that

11

Ms. Gooding was fired for treating another customer poorly and refusing to accept constructive feedback from her supervisor. *Id.*; ECF No. 138-19 at ¶¶ 20-24. Given that Ms. Gooding had been hired to provide professional, courteous, and responsive customer service to the Vitamin Shoppe clientele, the undisputed evidence supports that she was terminated on account of her lackluster performance.

For the same reason, even if Ms. Gooding could make her *prima facie* showing, the claim fails because no record evidence permits the inference that SYKES' stated reasons for firing Ms. Gooding were pretextual. Although Ms. Gooding tries to suggest that she was fired for having reported an on-the-job injury and having an asthma attack during a customer call (ECF No. 149 at 2), nothing backs up her claim. While Ms. Gooding appears to have emailed Ms. Hicks about her on-the-job fall shortly after it happened, Ms. Hicks' responses show only that she expressed concern for Ms. Gooding's health and do not demonstrate that she took any kind of retaliatory action. ECF No. 149-9 at 4-6. Furthermore, Ms. Gooding did not attempt to file an official worker's compensation claim for her on-the-job injury until March 7, one day after she had already been terminated. *Id.* at 8-10. Because "[m]ere unsupported speculation such as this" is simply insufficient to defeat summary judgment, the claim fails as a matter of law. *Ennis*, 53 F.3d at 62.

       **D.**       **Race Discrimination**

The Court next turns to Ms. Gooding's contention that she was fired on account of her race, in violation of Title VII. SYKES contends that no set of facts support the claim, assessing the sufficiency of the evidence under two related but distinct theories of liability – the *McDonnell Douglas* burden shifting and the "mixed motive" frameworks. *Foster v. Summer Vill. Cmty. Ass'n, Inc.*, 520 F. Supp. 3d 734, 741 (D. Md. 2021); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 317-18 (4th Cir. 2005). To survive summary judgment under the mixed motive framework,

some evidence must show that race was a motivating but not sole factor in the employer's decision to terminate the employee. *Foster*, 520 F. Supp. 3d at 741; *Diamond*, 416 F.3d at 318. Thus, the record must include some "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Foster*, 520 F. Supp. 3d at 741.

Under the *McDonnell Douglas* burden shifting framework, the plaintiff must advance some evidence in the *prima facie* case that she was fired on account of her race. *Id.* However, unlike the "but-for" requirement under the ADA, the plaintiff need only show that her race was a motivating factor behind her termination. *Id.* If the plaintiff makes a *prime facie* showing, then the burden shifts to the employer to "offer a legitimate, non-discriminatory reason for her discharge;" and if this showing is made, the burden shifts back to the plaintiff to generate some proof that the stated reason for her termination was pretextual. *Id.* at 741-42.

SYKES principally argues that under either framework, no evidence exists that SYKES fired Ms. Gooding on account of discriminatory animus. ECF No. 138-1 at 27-29. The Court agrees. Ms. Gooding asserts she has both "direct and circumstantial evidence that proves that her race is not only motivated [sic] Defendants' [sic] unlawful decision to terminate Plaintiff." ECF No. 149 at 2. She claims that she "experienced yelling, ridicules, 'monkey images' by chat, postings, harassing phone calls … and Adobe … regarding her race … by supervisors and co-workers." *Id.* at 1. She also asserts that Ms. Kittler and Ms. Bohn posted images on Facebook that were negative and defamatory towards black people. *Id.* at 8-9. But nothing in the record supports these contentions. In fact, the only person who mentions race in any of the written or recorded communications is Ms. Gooding herself. Additionally, Ms. Gooding admitted in her deposition that the monkey image she received was just another person's avatar in SYKES' chat

13

portal. ECF No. 138-4 at 67:5-68:6, 69:8-20. Nor do the supposedly offensive Facebook pages reflect any racial bias.[2] Because Ms. Gooding does little more than speculate she had been fired on account of her race, the claim cannot survive summary judgment.

Furthermore, as with the ADA discrimination claim, even if Ms. Gooding could make a *prima facie* showing, she has adduced no evidence that the stated reasons for her termination were pretextual. The record plainly reflects Ms. Gooding was fired after several incidents of poor performance and insubordination. Ms. Gooding has offered nothing to demonstrate these grounds had been anything short of genuine. Thus, this claim too fails as a matter of law.

### E. Hostile Work Environment

Turning next to the hostile work environment claim, Ms. Gooding avers that SYKES subjected her to a hostile and abusive workplace on account of her race and disability. ECF No. 120 at 13, 19, 24. To survive summary judgment on this claim, a plaintiff must adduce some evidence that she had been subjected to (1) unwelcome conduct; (2) based on her race or disability; (3) that was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (4) is imputable to the employer. *Fleetwood*, 380 F. Supp. 2d at 704; *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022). Critically, "[a] hostile-work-environment claim will only succeed when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive'" that the employee's conditions of employment are altered. *McIver*, 42 F.4th at 407 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Viewing the record most favorably to Ms. Gooding, no evidence supports that she had been subjected to any negative, hostile, or adverse action on account of her disability or race. Although

---

[2] The attachments include both the Facebook posting itself and inserted commentary from what appears to be Ms. Gooding. *E.g.*, ECF 149-8 (heading titled "Facebook public postings" with notations describing the posting as including "questionable behavior," and "dangerous photos.").

Ms. Gooding averred that SYKES employees sent her "offensive and derogatory jokes 'jungle fever' 'dark meat' of chicken and 'watermelon,'" no evidence supports her contention. ECF No. 120 at 17. Absent such proof, no rational juror could conclude that Ms. Gooding's work experience at SYKES was permeated with discriminatory intimidation and ridicule. *McIver*, 42 F.4th at 407. The Court therefore must grant summary judgment in SYKES' favor on this claim.

### F.      Retaliatory Discharge

Finally, the Court turns to Ms. Gooding's contention that she was fired in retaliation for having filed "formal complaints written or orally, to Ms. Kittler, manager, SYKES HR, Ms. Hicks and Ms. Barbee, SYKES Compliance Department … regarding Title VII and disability discrimination, harassment, ridicule, insults, differential treatment, derogatory and offensive remarks regarding her disability and race (African American)." ECF No. 120 at 12. To succeed in a retaliatory discharge claim, the plaintiff, at a minimum, must generate some evidence that she engaged in an activity protected under Title VII or the ADA, and the employer took an adverse action against her in response. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001); *McIver*, 42 F.4th at 411. If the plaintiff can make that showing, then the burden shifts to the defendant to articulate a legitimate non-retaliatory reason for the plaintiff's termination; ultimately, the plaintiff must demonstrate that the proffered reason for termination was pretextual. *Haulbrook*, 252 F.3d at 706.

As with Ms. Gooding's other claims, even if hypothetically she could make a *prima facie* case of retaliation, no evidence exists that SYKES' stated grounds for firing her were pretextual. Ms. Gooding's performance during her short tenure with SYKES had been problematic from the start. ECF No. 138-23 at 5. She was reprimanded on more than one occasion for poor customer service and an unwillingness to take direction from her supervisors. Even after receiving a "final

warning," Ms. Gooding rebuffed her supervisor's attempts to assist her and unleashed a torrent of unprofessional and hostile rebukes. *See* ECF No. 138-19 at ¶ 22; ECF No. 138-17. On this record, no rational juror could conclude that SYKES' reasons for her discharge had been a mere subterfuge for its true retaliatory motive.

### IV. Conclusion

For the foregoing reasons, SYKES' motion for summary judgment is granted. A separate Order will follow.

|  |  |
|---|---|
| 2/15/2023 | /S/ |
| Date | Paula Xinis |
|  | United States District Judge |